o

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID HERNANDEZ,                        )   Case No. EDCV 09-00845-DTB
                    Plaintiff,          )
                                        )
        vs.                             )   ORDER AFFIRMING DECISION OF
                                        )   COMMISSIONER
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                    Defendant.          )
                                        )

        Plaintiff filed a complaint ("Complaint") on May 13, 2009 seeking review of
the Commissioner's denial of his application for supplemental security income
benefits.   In accordance with the previously-assigned Magistrate Judge's Case
Management Order, the parties filed a Joint Stipulation on January 11, 2010. Thus,
this matter now is ready for decision.[1]

/ / /

/ / /

---

[1]     As the parties were advised in the Case Management Order, the decision
in this case is being made on the basis of the pleadings, the Administrative Record
("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.  In accordance with
Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1

**DISPUTED ISSUES**

2        As reflected in the Joint Stipulation, the disputed issues here are as follows:

3        1.       Whether the Administrative Law Judge ("ALJ") properly developed the

4    record regarding plaintiff's upper extremity impairments and resulting limitations.

5    (Jt Stip 3.)

6        2.       Whether the ALJ properly considered plaintiff's subjective complaints

7    and assessed his credibility.  (Jt Stip 10.)

8

9

**DISCUSSION**

10   **I.      Reversal is not warranted based on the ALJ's alleged failure to properly**

11           **develop the record.**

12           Plaintiff contends that the ALJ failed in his duty to develop the record

13   regarding plaintiff's "upper extremity impairments and resulting limitations." (Jt Stip

14   3.) Plaintiff further contends that the ALJ improperly based his residual functional

15   capacity ("RFC") assessment regarding his upper extremity limitations on a

16   consultative examiner's report that was almost two years old at the time of the

17   decision instead of obtaining medical expert testimony at the hearing or requesting

18   a follow-up consultative examination.  (Jt Stip 5-6.)

19           The claimant bears the burden of proving a disability and must provide medical

20   evidence demonstrating the existence and severity of an alleged impairment.  20

21   C.F.R. § 416.912(c); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as

22   amended).   Nonetheless, the ALJ has a special duty to fully and fairly develop the

23   record and to assure that the claimant's interests are considered, and that this duty

24   exists even when the claimant is represented by counsel.  See Brown v. Heckler, 713

25   F.2d 441, 443 (9th Cir. 1983) (per curiam); see also Tonapetyan v. Halter, 242 F.3d

26   1144, 1150 (9th Cir. 2001). An ALJ's duty to augment an existing record is triggered

27   "only when there is ambiguous evidence or when the record is inadequate to allow

28   / / /

2

1     for proper evaluation of the evidence." <u>Mayes</u>, 276 F.3d at 459-60 (citation omitted);

2     <u>see</u> <u>also</u> 20 C.F.R. § 416.927(c)(3).

3         Plaintiff argues that the ALJ failed to properly develop the record regarding his

4     upper extremity impairments and limitations given "the totality of evidence." (Jt Stip

5     5.) However, the record before the ALJ was neither ambiguous nor inadequate to

6     allow for proper evaluation of the evidence. The ALJ had adequate evidence to

7     evaluate plaintiff's testimony regarding his upper extremity impairments and

8     substantial evidence supported the ALJ's decision. The medical evidence in the

9     record was simply insufficient to support plaintiff's allegations relating to the severity

10     of his upper extremity limitations. The medical records that plaintiff provided did not

11     support a finding that his upper extremity impairments prevented him from working.

12     The majority of the medical records relating to upper extremity complaints only

13     referenced cellulitis and a hand sprain. (<u>See</u>, <u>e.g.</u>, AR 165 (December 2003 x-ray of

14     right elbow normal), 181 (August 2003 diagnostic image of left hand showed soft

15     tissue swelling with normal alignment and no fractures), 199 (July 2002 hand

16     cellulitis), 200 (June 2002 hand pain level decreased), 201 (May 2002 hand cellulitis),

17     218 (May 2002 wrist infection), 219 (May 2002 hand cellulitis), 281 (February 2007

18     minimum swelling), 343 (May 2002 mild cellulitis), 351 (May 2002 left wrist sprain),

19     353 (June 2002 cellulitis resolved), 457 (August 2007 tingling and pain in upper and

20     lower extremities, but treating physician only noted lower extremity diffuse swelling

21     on observation).) Further, although there is a February 2007 treatment note

22     referencing acute monoarticular arthritis of the right hand, this is the only note

23     regarding this issue and there are no follow-up notes. (<u>See</u> AR 429-30.)

24         The ALJ's RFC assessment finding that plaintiff can lift up to ten pounds

25     occasionally, less than ten pounds frequently, and is precluded from constant use of

26     his hands also is supported by the examining orthopaedic consultant's March 2007

27     finding that plaintiff's upper extremity use was not limited, despite plaintiff's

28     allegations of pain. (AR 296, 300.) An examining physician's opinion constitutes

1   substantial evidence when, as here, it is based on independent clinical findings.  Orn
2   v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).   The orthopaedic consultant, Dr.
3   Thomas R. Dorsey, reviewed plaintiff's medical records, interviewed plaintiff, and
4   examined plaintiff before opining on plaintiff's functional limitations. (AR 296-301.)
5   Despite plaintiff's argument that the consultative examiner's report was outdated,
6   plaintiff never asked the ALJ to consider ordering a further examination, nor has he
7   cited any evidence indicating that the report was no longer accurate or outdated.
8   Further, as noted by the ALJ, the State agency consultants' opinions were consistent
9   with Dr. Dorsey's opinion regarding plaintiff's lack of upper extremity limitations.
10  (AR 14; see also AR 305 (Dr. G.G. Spellman's April 2007 opinion), 320 (Dr. T.N.
11  Do's June 2007 opinion).)  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.
12  1995) (A non-examining physician's opinion constitutes substantial evidence when
13  it is supported by other evidence in the record and is consistent with it.).

14      Moreover, plaintiff was afforded ample opportunity to submit additional
15  medical records in support of his claim prior to the administrative hearing.  (See, e.g.,
16  AR 76.)  He also was advised to contact the ALJ if he needed help securing medical
17  evidence, including the issuance of a subpoena.  (Id.)  Indeed, even on appeal,
18  plaintiff has not pointed to any medical evidence demonstrating any effect his upper
19  extremity impairments have on his ability to work.  See Carmickle v. Comm'r, Soc.
20  Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming finding that carpal
21  tunnel syndrome was not severe impairment at step two where "the medical record
22  does not establish any work-related limitations as a result of this impairment.").

23      At the administrative hearing, the ALJ inquired into plaintiff's complaints
24  regarding his impairments.  When the ALJ asked what symptoms plaintiff has that
25  kept him from working, he did not mention any upper extremity impairments.  (AR
26  22.)  Specifically, the ALJ asked plaintiff "what symptoms you have that keep you
27  from working," to which plaintiff responded, "my legs swell up, my feet they swell
28  up too.  My knee is, my left knee hurts a lot.  I can't walk, I'm in a lot of pain."  (Id.)

4

1   Only after the ALJ afforded plaintiff's counsel the opportunity to ask questions and

2   counsel observed plaintiff clenching his fists, did plaintiff assert any upper extremity

3   impairments - i.e., that his hands hurt, go numb, and that he has no strength in them.

4   (AR 30-31.)    At no time did plaintiff's counsel assert that the record was

5   insufficiently developed, or identify further medical records that were available for

6   review.  Nor did he request that the record be left open for submission of additional

7   medical records.

8          Under the circumstances, the ALJ had adequate evidence to evaluate plaintiff's

9   claimed upper extremity limitations and did not abrogate his duty to develop the

10  record.  Plaintiff has failed to show that the evidence was either ambiguous or the

11  record was inadequate to allow for proper evaluation of the evidence.  See Ortiz v.

12  Astrue, No. CV 10-01507-MLG, 2010 WL 3742649, at *4 (C.D. Cal. Sept. 17, 2010)

13  (noting that the claimant failed to show that the evidence was ambiguous or that the

14  record was inadequate to allow for proper evaluation).  Accordingly, the ALJ fulfilled

15  his duty to properly develop the record, and he was under no obligation to further

16  develop the record.

17

18  **II.    Reversal is not warranted based on the ALJ's alleged failure to make a**

19         **proper adverse credibility determination.**

20         Plaintiff also contends that the ALJ failed to properly consider his subjective

21  complaints and credibility. (Jt Stip 10.) In his decision, the ALJ found that plaintiff's

22  medically determinable impairment could reasonably be expected to cause the alleged

23  symptoms, but that his statements "concerning the intensity, persistence and limiting

24  effects of these symptoms [were] not credible to the extent they [were] inconsistent

25  with the above residual functional capacity assessment."  (AR 13.)   The ALJ

26  discounted plaintiff's credibility for two primary reasons, both of which were

27  supported by substantial evidence:  (1) Plaintiff's behavior at the hearing was

28  / / /

1  inconsistent with his own statements; and (2) plaintiff's allegations of disabling pain
2  were inconsistent with the objective medical evidence. (AR 13-14.)

3      Where the claimant has produced objective medical evidence of an impairment
4  or impairments which could reasonably be expected to produce some degree of pain
5  and/or other symptoms, and the record is devoid of any affirmative evidence of
6  malingering, the ALJ may reject the claimant's testimony regarding the severity of
7  the claimant's pain and/or other symptoms only if the ALJ makes specific findings
8  stating clear and convincing reasons for doing so. See Smolen v. Chater, 80 F.3d
9  1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see
10 also Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

11     Here, there may be affirmative evidence of malingering in the treating source
12 documents as noted by the Commissioner, (see Jt Stip 14; see also AR 333 (December
13 2000 opinion that plaintiff's subjective complaints appear to be somewhat excessive),
14 335-36 (January 2001 opinion that plaintiff's subjective complaints are in excess of
15 what can be found objectively)), but even if such affirmative evidence was not
16 contained in the record, the ALJ offered clear and convincing reasons for rejecting
17 plaintiff's testimony.

18     First, the ALJ discounted plaintiff's statements to the extent they were
19 inconsistent with his own observations. (AR 13.) The ALJ may employ ordinary
20 techniques of credibility evaluation and may take into account prior inconsistent
21 statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.
22 5 (9th Cir. 1989). Accordingly, the ALJ may rely on what he observes at a hearing
23 that undermines a claimant's alleged symptoms. Verduzco v. Apfel, 188 F.3d 1087,
24 1090 (9th Cir. 1999); O'Bosky v. Astrue, 651 F. Supp. 2d 1147, 1163 (E.D. Cal.
25 2009) ("The ALJ may also rely, in part, on his own observations."). Plaintiff testified
26 at the administrative hearing that he could not work because he was unable to walk.
27 (AR 22, 32.) However, plaintiff later admitted that he could walk some, including
28 / / /

through the grocery store, after his counsel observed that plaintiff walked into the hearing room.  (AR 32.)  The following exchange took place:

> Q:     Okay.  Now, you damaged the hip at that point and they did surgery, did they fix the hip?
>
> A:     No.
>
> Q:     Has it changed since 2004, the problem with your hip?
>
> A:     Oh, yes.
>
> Q:     What's different?
>
> A:     I can't walk, I can't do the activities I use to do.
>
> Q:     Well you can walk some because you walked in here today.
>
> A:     Yes.
>
> Q:     So you can walk some.  So what do you mean to tell us as far as walking?  In other words, you're able to walk a little bit at least, correct?
>
> A:     Yes.

(AR 31-32.)  Based on the testimony and his observations at the hearing, the ALJ properly considered plaintiff's inconsistent statements.

The ALJ also gave less weight to plaintiff's statements to the extent they were inconsistent with the objective medical evidence.  (AR 13-14.)  Contradiction with the medical record is a sufficient basis for rejecting plaintiff's subjective pain testimony.  See Carmickle, 533 F.3d at 1161; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ may properly rely on inconsistency between claimant's subjective complaints and objective medical findings); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record).

/ / /

Here, the ALJ reviewed the record and afforded "great" weight to the opinion of consultative examiner, Dr. Dorsey, who opined that plaintiff could stand and walk for two hours in an eight-hour workday, lift and carry ten pounds occasionally and less than ten pounds frequently, and bend and stoop on an occasional basis. (AR 14-15, 300.)  Plaintiff was precluded from standing or walking on uneven ground, but sitting was not limited and his upper extremity use was not limited. (AR 300.)  Use of a cane was appropriate at all times.  (Id.)  Dr. Dorsey also noted that plaintiff refused to cooperate with some of the testing, including refusing to walk without a cane, do a heel and toe walk, or sit on the examination table. (AR 298-300.)  This is especially relevant given that one of plaintiff's treating physicians found plaintiff may be exaggerating his symptoms.  (See AR 333, 335-36.)  The ALJ also took into account that Dr. Dorsey's findings were consistent with the opinions of the State agency consultants.  (See AR 14, 305, 310-11, 320.)

Additionally, the ALJ found that despite plaintiff's complaints of prolonged and chronic pain, he did not exhibit any diffuse atrophy from lack of use. (AR 13; see also AR 338-39 (January 2001 report noting lack of atrophy).)  This was a proper reason for discounting the plaintiff's subjective complaints. See Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (as amended) (ALJ may consider absence of muscular atrophy or other physical signs of an incapacitated claimant); Calderon v. Astrue, No. CV 08-5269-RC, 2009 WL 1357395, at *7 (C.D. Cal. May 12, 2009).  The objective medical evidence mostly showed only mild arthritis or degenerative changes, with few records even showing moderate degenerative changes.  (See, e.g., 159 (December 2003 negative CT scan of cervical spine), 162 (December 2003 diagnostic image showed normal alignment, mild diffuse soft tissue swelling, and mild arthritic change of right foot), 165 (December 2003 negative x-ray of right elbow), 167 (December 2003 diagnostic image showed no fracture, but mild degenerative arthritis of the lumbar spine), 176 (September 2003 diagnostic image showed no evidence of acute fracture

1    or dislocation, only mild diffuse soft tissue swelling of left ankle), 179 (August 2003

2    diagnostic image showing normal alignment, small joint effusion, and minimal

3    degenerative osteophytes in left knee), 186 (August 2004 progress note indicating

4    low back pain, but that condition at discharge was good), 407 (February 2006

5    progress notes indicating mild degenerative changes to left knee), 449 (July 2007

6    progress notes recommending weight loss for knee pain), 450 (July 2007 diagnostic

7    image of pelvis showed stable internal fixation of distal radius), 453 (July 2007

8    diagnostic image of right knee showed moderate degenerative changes), (July 2007

9    diagnostic image of left knee showed moderate joint degenerative arthritis), 455 (July

10   2007 diagnostic image of knees showed mild degenerative changes), 456 (July 2007

11   diagnostic image showed right hip in good position), 458 (August 2007 clinical notes

12   recommending weight loss), 463 (December 2007 x-rays showed mild degenerative

13   changes in thoracic spine), 474 (March 2008 diagnostic image showed postsurgical

14   changes and degenerative joint disease of right hip were stable).)

15        The ALJ also found that plaintiff does not experience any side effects from his

16   pain medication, which also could properly be considered in rejecting plaintiff's

17   excess pain testimony.  (AR 13; see also AR 35.)  See Osenbrock, 240 F.3d at 1165-

18   66; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam).

19        The ALJ provided specific, clear and convincing reasons for declining to fully

20   credit plaintiff's testimony, and his credibility finding is supported by substantial

21   evidence.  See Fair, 885 F.2d at 604 ("Where, as here, the ALJ has made specific

22   findings justifying a decision to disbelieve an allegation of excess pain, and those

23   findings are supported by substantial evidence in the record, our role is not to

24   second-guess that decision."); see also Morgan, 169 F.3d at 600 ("Citing the conflict

25   between [the claimant's] testimony of subjective complaints and the objective

26   medical evidence in the record, and noting the ALJ's personal observations, the ALJ

27   provided specific and substantial reasons that undermined [the claimant's]

28   credibility.").

9

1

**ORDER**

2        IT THEREFORE IS ORDERED that Judgment be entered affirming the

3 decision of the Commissioner and dismissing this action with prejudice.

4

5 DATED:  January 10, 2011

6

7                                          _____
8                                          DAVID T. BRISTOW
                                           UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10